UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

KING RANGE                                         **CV**

                               Plaintiff,        **ECF CASE**

        -against-

                                              **COMPLAINT**

154 E. 116TH STREET CORP., WINGS K.
LEONG, ROBERT B. JOHNSEN, 116TH STREET
BURGERS, LLC AND BURGER KING
CORPORATION

                                Defendants.
--------------------------------------------------------------x

## <u>COMPLAINT</u>

Plaintiff King Range (hereafter referred to as "plaintiff"), by counsel, Parker Hanski LLC, as and for the Complaint in this action against defendants 154 E. 116th Street Corp., Wing K. Leong, Robert B. Johnsen, 116th Street Burgers, LLC and Burger King Corporation (together referred to as "defendants"), hereby alleges as follows:

## <u>NATURE OF THE CLAIMS</u>

1.       This lawsuit opposes pervasive, ongoing and inexcusable disability discrimination by the defendants.  In this action, plaintiff seeks declaratory, injunctive and equitable relief, as well as monetary damages and attorneys' fees, costs and expenses to redress defendants' conspiracy to deprive plaintiff of civil rights in violation of 42 U.S.C. § 1985, Conspiracy to Interfere with Civil Rights ("42 U.S.C. § 1985") as well as defendants' unlawful disability discrimination against plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et. seq.* and its implementing regulations, the New York State Executive Law (the "Executive Law"), § 296, New York State Civil Rights Law, § 40, and the Administrative Code of the City

1

New York (the "Administrative Code"), § 8-107.  Plaintiff also alleges claims for

Negligence.  As explained more fully below, defendants own, lease, lease to, operate and

control a place of public accommodation that violates the above-mentioned laws.

Defendants are vicariously liable for the acts and omissions of their employees and

agents for the conduct alleged herein.

2.    These defendants conspired and made a financial decision to ignore the

explicit legal requirements for making their place of public accommodation accessible to

persons with disabilities – all in the hopes that they would never be caught.  In so doing,

defendants made a calculated, but unlawful, decision that disabled customers are not

worthy.  The day has come for defendants to accept responsibility.  This action seeks to

right that wrong via recompensing plaintiff and making defendants' place of public

accommodation fully accessible so that plaintiff can finally enjoy the full and equal

opportunity that defendants provide to non-disabled customers.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this matter pursuant to 42 U.S.C. §

1985, 42 U.S.C. § 12188 and 28 U.S.C. §§ 1331 and 1343 as this action involves federal

questions regarding the conspiracy to and deprivation of plaintiff's rights under 42 U.S.C.

§ 1985 and the ADA.  The Court has supplemental jurisdiction over plaintiff's related

claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because

defendants' acts of conspiracy and discrimination alleged herein occurred in this district

and defendants' place of public accommodation that is the subject of this action is located

in this district.

## PARTIES

5.    At all times relevant to this action, plaintiff King Range has been and remains currently a resident of the State and City of New York.

6.    At all times relevant to this action, plaintiff King Range has been and remains a wheelchair user.  Plaintiff suffers from medical conditions that inhibit walking and restrict body motion range and movement.

7.    Defendant 154 E. 116th Street Corp. owns the property located at 154 East 116th Street in New York County, New York (hereinafter referred to as "154 East 116th Street").

8.    Defendant 154 E. 116th Street Corp. is licensed to and does business in New York State.  Defendants Wing K. Leong, Robert B. Johnsen, 116th Street Burgers, LLC and Burger King Corporation are licensed to do and do business in New York State.

9.    At all relevant times, defendants Wing K. Leong, Robert B. Johnsen, 116th Street Burgers, LLC and Burger King Corporation operate and/or lease property located at 154 East 116th Street from the defendant 154 E. 116th Street Corp. (hereinafter referred to as the "Burger King" premises).

10.    Upon information and belief, 154 E. 116th Street Corp. and Wing K. Leong, Robert B. Johnsen, 116th Street Burgers, LLC and Burger King Corporation have a written lease agreement.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

11.    Each of the defendants are public accommodations as they own, lease, lease to, control or operate a place of public accommodation, the Burger King premises located at 154 East 116th Street, within the meaning of the ADA (42 U.S.C. § 12181 and

28 C.F.R. § 36.104), the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)).

12.     The Burger King premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)) as it is a facility operated by a private entity as a retail establishment, and its operations affect commerce.

13.     Numerous architectural barriers exist at defendants' place of public accommodation that prevent and/or restrict access to plaintiff, a person with a disability.

14.     At some time after January 1992, defendants made alterations to 154 East 116th Street, including areas adjacent and/or attached to 154 East 116th Street.

15.     At some time after January 1992, defendants made alterations to the Burger King premises, and to areas of 154 East 116th Street related to the Burger King premises.

16.     At some time after January 1992, defendants altered the primary function areas of the Burger King premises and 154 East 116th Street that relate to the Burger King premises.

17.     Since the effective date of § 27-292 of the Administrative Code (also known as "Local Law 58"), defendants have constructed and/or made alterations to the Burger King premises, and to areas of 154 East 116th Street related to the Burger King premises.

18.     Within a year of commencing this action as well as within the past three years of filing this action, plaintiff attempted to and desired to access the Burger King premises.

19.    The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design ("1991 Standards") or the revised final regulations implementing Title III of the ADA adopted by the United States Department of Justice in 2010 as the 2010 Standards for Accessible Design ("2010 Standards").

20.    The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Administrative Code § 27-292 *et. seq.*

21.    Because of defendants' failure to and conspiracy not to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, plaintiff was and has been unable to enjoy equal and complete access to defendants' place of public accommodation.

22.    Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, the Administrative Code, or the Building Code of the City of New York ("BCCNY").

23.    Barriers to access that plaintiff encountered and/or which exist at the defendants' place of public accommodation include, but are not limited to, the barriers identified below:

I.    Defendants fail to provide that at least one of each type of sales and/or service counter is accessible and dispersed throughout its premises.  See 1991 Standards § 7.2; 2010 Standards §§ 227.3, 227.1, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

II. Defendants fail to provide that at least one of each type of function counter is accessible and dispersed throughout its premises. See 1991 Standards §§ 7.2, 7.3(1); 2010 Standards §§ 227.3, 904; and BCCNY §§ 1109.12, 1109.12.3.

III. Defendants fail to provide a portion of the sales and/or service counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction in a manner similar to non-disabled customers. See 1991 Standards § 7.2; 2010 Standards §§ 227.1, 227.3, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

IV. Defendants fail to provide the minimum required maneuvering clearances of level and clear space for an accessible path of travel to and from the sales and/or service counters. See 1991 Standards §§ 4.3, 4.2, 4.2.4, 4.32.2, 5.3; and 2010 Standards §§ 305, 305.3, 305.5, 305.6, 802.1.2, 802.1.3, 902.2, 903.1, 903.2, 902.4.1.

V. Defendants fail to provide sufficient clear space of 30 inches by 48 inches in front of the sales and/or service counter from which to conduct the transaction. See 1991 Standards § 4.2.4.1, 7.1, 7.2; and 2010 Standards §§ 305, 904.4.

VI. Defendants fail to provide an accessible route to approach the sales and/or service counters thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction. See 1991 Standards §§ 7.1, 4.3; and 2010 Standards §§ 904.2, 403.

VII. Defendants fail to provide an accessible route to exit the sales and/or service counters thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction. See 1991 Standards §§ 7.1, 4.3; and 2010 Standards §§ 904.2, 403.

VIII. Defendants fail to provide that the sales and/or service counters have accessible reach ranges from which to conduct a transaction. See 1991 Standards §§ 5.6 and 4.2; 2010 Standards §§ 904.5.1, 308, 227.4.

IX. Defendants fail to provide that at least one and not less than 5% of seating and standing spaces and/or dining surfaces are accessible and dispersed throughout the premises. See 1991 Standards §§ 4.1.3(18), 4.32, 5.1; 2010 Standards §§ 226, 226.1, 226.2, 902.1; BCCNY §§ 1108.2.9.1, 1109.11; and Administrative Code § 27-292.10(3).

X. Defendants fail to provide the minimum required maneuvering clearances of level and clear space in front of the seating for dining. See 1991 Standards §§ 4.32.2, 5.3; and 2010 Standards §§ 305.3, 802.1.2, 802.1.3, 902.2, 903.1, 903.2, 902.4.1.

XI.   Defendants fail to provide a space for dining where plaintiff's wheelchair does not overlap the accessible route and/or a space that adjoins an accessible route. See 1991 Standards §§ 4.32.2, 5.1, 5.3; and 2010 Standards §§ 305.6, 802.1.4.

XII.   Defendants fail to provide a space for dining where plaintiff's wheelchair does not the overlap the general circulation path and/or emergency egress routes. See 1991 Standards §§ 5.1, 5.3, 4.32.2, 4.2.4; and 2010 Standards § 802.1.5.

XIII.   Defendants fail to provide the International Symbol of Accessibility at its designated accessible seating. BCCNY § 11010.1(9).

XIV.   Defendants fail to provide dining tables and/ surfaces that are at an accessible height. See 1991 Standards §§ 4.32.4, 5.1; and 2010 Standards § 902.3.

XV.   Defendants fail to provide dining tables and/ surfaces that have the minimum required knee clearances. See 1991 Standards §§ 4.32.3, 5.1; and 2010 Standards §§ 305.4, 306.

XVI.   Defendants fail to provide dining tables and/or surfaces that have the minimum required toe clearances. See 1991 Standards §§ 4.32.3, 5.1; and 2010 Standards §§ 305.4, 306.

XVII.   Defendants fail to provide that its self-service shelves and dispensing devices for, dishware, tableware, utensils and napkins are within the accessible reach ranges thereby depriving plaintiff of items that are available to non-disabled customers. See 1991 Standards §§ 5.6 and 4.2; 2010 Standards §§ 904.5.1, 308, 227.4.

XVIII.   Defendants fail to provide that its self-service shelves and dispensing devices for dishware, tableware, utensils and napkins have the minimum required maneuvering clearance of level and clear space for a front or side approach thereby depriving plaintiff of items that are available to non-disabled customers. See 1991 Standards §§ 5.1, 5.6; and 2010 Standards §§ 309, 305.3, 802.1.2, and 802.1.3.

XIX.   Defendants fail to provide that the controls for the dispensing devices for dishware, tableware, utensils and/or napkins are usable to the disabled plaintiff thereby depriving plaintiff of items that are available to non-disabled customers. See 1991 Standards § 4.27; and 2010 Standards §§ 205.1, 309.3, 309.4, 309.5.

XX.   Defendants fail to provide an accessible public toilet room. See Standards §§ 4.23, 4.18, 4.19, 4.17, 4.24, 4.22, 4.1.6(e) and 4.1.3(11); 2010 Standards §§ 213.1, 213.2, 603.1, 604, 605, 606; Administrative Code §§ 27-292(b), 27-292.12, RS-16, and P104.09(c); and BCCNY § 1109.2.

XXI.   At the inaccessible public toilet room, defendants do not provide and display the International Symbol of Accessibility with the required information indicating the

location of a designated and nearest accessible public toilet room.  See Standards §§ 4.1.6(3)(e)(iii), 4.1.3(16)(a), 4.1.2(7), 4.30, 4.30.6, 4.30.7; 2010 Standards §§ 216.3, 216.8, 703, 703.7.2.1; BCCNY § 1110.1.

XXII.   Defendants do not provide and display the International Symbol of Accessibility alongside the toilet room door at the latch side between 48 and 60 inches above the finished floor.  See Standards § 4.1.2(7)(d), 4.1.3(16)(a), 4.30, 4.30.6, 4.30.7; 2010 Standards §§ 216.2, 216.3, 216.8, 703.7.2.1, 703

XXIII.  Defendants fail to provide the minimum required maneuvering clearance of level and clear floor space inside the toilet room.  See 1991 Standards §§ 4.16.2, 4.17.3, 4.23.3, 4.22.3; and 2010 Standards §§ 604.3, 604.8.1.1; and Administrative Code §§ 27-292, RS-16, and P104.09(c).

XXIV.   Defendants fail to provide that the minimum required floor space free of obstructions and/or fixtures exists inside the toilet room.  See 1991 Standards § 4.16.2, 4.23.3, 4.22.3; and 2010 Standards § 604.3.2.

XXV.    Defendants fail to provide the minimum required turning diameter of 60 inches of level and clear space inside the toilet room.  See 1991 Standards § 4.2.3; 4.23.3, 4.22.3; and 2010 Standards §§ 603.2.3, 304.

XXVI.   Defendants fail to provide that the pipes under the lavatory are insulated, nonabrasive, or otherwise protected against contact thereby exposing plaintiff to severe personal injury.  See 1991 Standards §§ 4.1.3(11), 4.19.4, 4.22.6, 4.24.6; and 2010 Standards §§ 213.3.4, 606.5.

XXVII.  Defendants fail to provide the minimum required unobstructed floor space in front of the lavatory in the public toilet room.  See 1991 Standards §§ 4.19.3, 4.1.3(11), 4.22.3, 4.22.6, 4.23.2 4.24.5; and 2010 Standards §§ 213.3.4, 606.2, 305, 306.

XXVIII. Defendants fail to provide that the operable controls for dispensers, dryers and other devices above or adjacent to the lavatory are within the accessible reach ranges.  See 1991 Standards §§ 4.2.5, 4.25.3, 4.1.3(12), 4.22.7 and 4.23.7; 2010 Standards §§ 213.3.7, 603.4, 308, 308.2.2, 309.3; and Administrative Code § 27-292.16.

XXIX.   Defendants fail to provide that the reach depth for the operable controls for dispensers, dryers and other devices above or adjacent to the lavatory is no greater than 25 inches deep.  See 1991 Standards §§ 4.2.5, 4.25.3, 4.1.3(12), 4.22.7 and 4.23.7; 2010 Standards §§ 213.3.7, 603.4, 308, 308.2.2, 309.3; and Administrative Code § 27-292.16.

XXX.    Defendants fail to provide the minimum required knee clearance of level and clear floor space under the lavatory.  See 1991 Standards §§ 4.1.3(11), 4.22.6, 4.19.2; and 2010 Standards §§ 213.3.4, 305.4, 306, 606.2.

XXXI. Defendants fail to provide the minimum required toe clearance of level and clear floor space under the lavatory.  See 1991 Standards § 4.19.2; and 2010 Standards §§ 213.3.4, 305, 306, 606.2.

XXXII. Defendants fail to provide an accessible route to all the fixtures within the public toilet room.  See 1991 Standards §§ 4.1.3(1), 4.3.3, 4.3.8, and 4.22.3, 4.23.3.

XXXIII. Defendants fail to provide the minimum maneuvering clearance of level and clear space adjacent to the handle side of the toilet door exit.  See 1991 Standards §§ 4.22.2, 4.17.5, 4.1.3(7), 4.13.6; and 2010 Standards §§ 404.2.4.1, 305.3, 604.8.1.2.

XXXIV. Defendants fail to provide that the toilet door handle hardware does not require tight grasping, tight pinching and twisting of the wrist to operate.  See 1991 Standards §§ 4.22.2, 4.17.5, 4.1.3(7) and 4.13.9; and 2010 Standards §§ 206.5.1, 404.2.7, 309.4, 604.8.1.2.

XXXV. Defendants fail to provide that the toilet door lock hardware does not require tight grasping, tight pinching and twisting of the wrist to operate.  See 1991 Standards §§ 4.22.2, 4.17.5, 4.1.3(7) and 4.13.9; and 2010 Standards §§ 206.5.1, 404.2.7, 309.4, 604.8.1.2.

XXXVI. Defendants fail to provide that the centerline of the toilet is between 16 inches and 18 inches from the sidewall.  See 1991 Standards § 4.16.2; and 2010 Standards § 604.3.2.

XXXVII. Defendants fail to provide rear and side toilet grab bars inside the toilet room.  See Standards §§ 4.1.3(11), 4.17.3, 4.17.6, 4.22.4, 4.16.4; 2010 Standards § 604.5, 604.8.1.5, 609; and Administrative Code RS-16 § P104.09(c).

XXXVIII. Defendants fail to provide that the output for the toilet paper dispenser is located between 15 inches and 48 inches above the finished floor.  See 1991 Standards § 4.16.6; and 2010 Standards §§ 309.4, 604.7.

XXXIX. Defendants fail to provide that the distance from the centerline of the toilet paper dispenser to the front of the toilet is between 7 inches and 9 inches.  See 1991 Standards § 4.16.6; and 2010 Standards § 604.7.

24.    Upon information and belief, a full inspection of the defendants' place of public accommodation will reveal the existence of other barriers to access.

9

25.     Defendants' conspiracy and failure to make their place of public accommodation accessible denies plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

26.     Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures for persons with disabilities are compliant with the laws. Nor have defendants made or provided reasonable accommodations or modifications to persons with disabilities.

27.     Defendant 154 E. 116th Street Corp. has failed to ensure that its lessee's place of public accommodation and the elements therein are in compliance with the 1991 Standards or the 2010 Standards; the Administrative Code, and the BCCNY including but not limited to ensuring the maintenance of accessible features.

28.     The barriers to access within defendants' place of public accommodation continue to exist.

29.     Plaintiff frequently travels to the shopping area and neighborhood where defendants' place of public accommodation is located and patronizes places in the neighborhood.

30.     Plaintiff intends to patronize the defendants' place of public accommodation several times a year after it becomes fully accessible and compliant with the 1991 Standards or the 2010 Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY.

## FIRST CAUSE OF ACTION

**(CONSPIRACY TO DEPRIVE PLAINTIFF OF CIVIL RIGHTS
IN VIOLATION OF 42 U.S.C. § 1985)**

31.    Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

32.    In enacting the ADA, Congress expressly found that people with disabilities have been segregated and "subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society" and that "many of the problems faced by disabled people are not inevitable, but instead are the result of discriminatory policies based on unfounded, outmoded stereotypes and perceptions, and deeply imbedded prejudices toward people with disabilities."  See H.R. REP. 101-485(III), H.R. REP. 101-485, H.R. Rep. No. 485(III), 101ST Cong., 2ND Sess. 1990, 1990 U.S.C.C.A.N. 445, 1990 WL 121680 at *447-448 (Leg.Hist.).

33.    Pursuant to their conspiracy, defendants have deprived and continue to deprive the wheelchair user plaintiff, either directly or indirectly, of the equal protection of the laws, and/or of equal privileges and immunities under the laws in violation of 42 U.S.C. § 1985(3).

34.    At all relevant times, the defendants were aware of the ADA, the Executive Law, or the Administrative Code's legal requirements relating to accessibility for wheelchair users.

35.    Upon information and belief, defendants received documents (including, but not limited to, appraisals, property condition reports and accessibility surveys) that provided actual knowledge of the accessibility requirements for their public accommodation as well as the accessibility barriers within their public accommodation.

36.     Pursuant to their conspiracy, defendants have engaged and continue to engage in conduct intended to hinder and deprive plaintiff of rights guaranteed against private impairment, including, but not limited to, the right to fully and equally enjoy defendants' public accommodation guaranteed to the plaintiff by the ADA, the Executive Law, or the Administrative Code's design, construction, and/or barrier removal requirements. See 42 U.S.C. § 12182.

37.     Defendants and their respective agents, architects, engineers, designers, contractors, equity providers, and lenders (collectively referred to as "conspirators") intentionally targeted, mistreated, and obtained unlawful profits off of, disabled wheelchair users based on unfounded, outmoded stereotypes and perceptions, and deeply imbedded prejudices that disabled wheelchair users are indigent, politically powerless, weak, easy to victimize, and too timid to effectively enforce their civil rights.

38.     The conspirators have intentionally targeted disabled wheelchair users to unequal treatment because of stereotypical assumptions that the disabled wheelchair users have less disposable income and cannot afford to patronize the defendants' public accommodation and/or generate less revenue than non-disabled persons.

39.     The conspirators have intentionally targeted disabled wheelchair users for unequal treatment because of stereotypical assumptions that the cost of providing accessibility for disabled wheelchair users is far greater than the revenue they can receive from disabled wheelchair users, and/or from their non-wheelchair user customers if their place of public accommodation is wheelchair accessible.  In other words, that disabled wheelchair users are not worth the money as compared to non-disabled persons.

41.     The conspirators have intentionally excluded and/or denied disabled wheelchair users from all or a portion of their place of public accommodation, and subjected disabled wheelchair users to unequal treatment because of stereotypical perceptions that they take up too much floor space and require more service than non-disabled persons.

42.     The conspirators have intentionally excluded and/or denied disabled wheelchair users from all or a portion of their place of public accommodation, and subjected disabled wheelchair users to unequal treatment because they do not desire them in their place of public accommodation as customers, and do not desire non-wheelchair users to perceive them as the image of defendant's customers.  Conspirators desires stem from deeply imbedded prejudices that cause them irrational discomfort and aversion to persons with visible disabilities.

43.     The conscious objective of the defendants and/or conspirators' enterprise has been to purposely impair plaintiff's lawfully protected rights to accessibility within defendants' public accommodation by purposely designing, constructing and maintaining their public accommodation with the intention of producing an inaccessible public accommodation.

44.     The conspirators designed, constructed, operated and have maintained a place of public accommodation that is accessible to non-disabled persons that do not require a wheelchair for mobility.

45.      In stark contrast, the conspirators designed, constructed, operated and have maintained a place of public accommodation that is not accessible to disabled

persons that require a wheelchair for mobility thereby readily giving rise to the presumption that defendants intended to disfavor disabled wheelchair users.

46.    The conspirators have cured expeditiously any condition that has posed a barrier to accessibility for the non-disabled.

47.    In stark contrast, the conspirators have purposely refused and failed to maintain accessible features and/or cure the numerous conditions that pose difficult barriers to accessibility for disabled wheelchair users thereby readily giving rise to the presumption that defendants intended to disfavor disabled wheelchair users.

48.    The conspirators have engaged in objectively invidious and maliciously motivated discriminatory disparate treatment against disabled wheelchair users because of their disability.

49.    Pursuant to their conspiracy, defendants also have, and continue to, reap large profits from the harm they have inflicted upon plaintiff and other persons with mobility related disabilities.  These unlawful profits arise from pocketing the money that should have been used for accessibility, and from additional, but unlawful, square footage devoted to selling space instead of accessibility.

50.    The additional, unlawful, square footage gained through this conspiracy to deny people with disabilities of their civil rights, benefits Wing K. Leong, Robert B. Johnsen, 116th Street Burgers, LLC and Burger King Corporation as they have extra usable space. It also benefits 154 E. 116th Street Corp. as, upon information and belief, they receive higher rents, and/or a percentage of benefits Wing K. Leong, Robert B. Johnsen, 116th Street Burgers, LLC and Burger King Corporation's sales dollars as

additional rent, as a result of the unlawful excess selling space derived from violating the disability laws.

51.    These excess revenues are a direct result of denying people with mobility disabilities access to their place of public accommodation, as by so doing conspirators converted, and maintained, space required for accessibility into excess selling space, and an unlawful profit center.

52.    This conspiracy to violate plaintiff's civil rights was effectuated through, among other means, an agreement and/or tacit understanding, to select and reaffirm a course of conduct that the conspirators would design, construct, alter, maintain the defendants' public accommodation in a manner that rendered it inaccessible to persons who use wheelchairs for mobility, like plaintiff.

53.    Each of the conspirators directed, conceived, agreed to and/or approved of the unlawfully discriminatory design, construction, alteration, and maintenance of the defendants' public accommodation.

54.    Among other acts, the defendants did not and do not enforce their own explicit contractual provisions (including those contained in their lease agreement and loan documents) that require the defendants to "comply with all federal, state and local laws", including, but not limited to the ADA.

55.    Upon information and belief, 154 E. 116th Street Corp. also approved Wing K. Leong, Robert B. Johnsen, 116th Street Burgers, LLC and Burger King Corporation's design and construction plans, layouts and trade fixtures, although 154 E. 116th Street Corp. was aware that these plans violated the ADA because they created unlawful architectural and design barriers.  154 E. 116th Street Corp. purposefully

ignored these prospective ADA violations, and did not require Wing K. Leong, Robert B. Johnsen, 116th Street Burgers, LLC and Burger King Corporation to correct their plans so that they would comply with the ADA.  154 E. 116th Street Corp. approved the inaccessible construction and design plans, as part of an agreement and/or tacit understanding that it itself would not, and that it also would not require Wing K. Leong, Robert B. Johnsen, 116th Street Burgers, LLC and Burger King Corporation to comply with the ADA.

56.    Pursuant to their conspiracy, 154 E. 116th Street Corp. continues to approve and allow Wing K. Leong, Robert B. Johnsen, 116th Street Burgers, LLC and Burger King Corporation to operate their premises in an inaccessible manner; for example, by allowing Wing K. Leong, Robert B. Johnsen, 116th Street Burgers, LLC and Burger King Corporation to maintain architectural and design barriers, inaccessible trade fixtures and other elements in the Burger King premises.

57.    Despite knowing and/or recklessly disregarding that their conduct, agreement and/or tacit understanding denies people with disabilities their civil rights to equal access and use of defendants' place of public accommodation, the defendants/conspirators have and continue to brazenly violate the law protecting persons who use wheelchairs for mobility due to reasons identified herein.

58.    The intentional and reprehensible conduct alleged herein against the class of people with disabilities who use wheelchairs for mobility were overt acts in furtherance of the conspiracy to purposely design, construct and maintain their premises in a manner that injures plaintiff's person and deprives plaintiff of equal rights and privileges of a citizen of the United States including, but not limited to, the right to fully

and equally enjoy the defendants' public accommodation in the same manner as non-disabled patrons. This conspiracy must end now.

59.     As a direct and proximate result of defendants' unlawful discrimination, plaintiff has, and continues to, endure mental anguish and emotional distress, including but not limited to, humiliation, stress, anxiety, and emotional pain and suffering.

60.     Plaintiff also seeks punitive damages against the defendants because of defendants' willful and/or reckless disregard for plaintiff's rights, in an amount to be determined at trial but no less than **$100,000.00 (ONE HUNDRED THOUSAND DOLLARS).**

## SECOND CAUSE OF ACTION
### (VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)

61.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

62.     Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct and proximate result of plaintiff's disability, plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

63.     The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation.  28 C.F.R. 36.201(b).

64.     Under the ADA, both the property owner and lessee are liable to the plaintiff and neither can escape liability by transferring their obligations to the other by contract (i.e. lease agreement).  28 C.F.R. 36.201(b).

65.     Defendants have and continue to subject plaintiff to disparate treatment by denying plaintiff full and equal opportunity to use their place of public accommodation all because plaintiff is disabled.  Defendants' policies and practices have disparately impacted plaintiff as well.

66.     By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and not desired as patrons of their public accommodation.

67.     Defendants have discriminated against the plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards.  See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

68.     Defendants' place of public accommodation is not fully accessible and fails to provide an integrated and equal setting for the disabled, all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

69.     Upon making alterations to their public accommodation, defendants failed to make their place of public accommodation accessible to plaintiff to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406.

70.     Upon making these alterations to the primary function areas, defendants failed to make the paths of travel to the primary function areas accessible to plaintiff, in violation of 28 C.F.R. § 36.403.

71.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.  It would

be readily achievable to make defendants' place of public accommodation fully accessible.

72.    By failing to remove the barriers to access where it is readily achievable to do so, defendants have discriminated against plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

73.    In the alternative, defendants have violated the ADA by failing to provide plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

74.    Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

75.    Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a result, within the meaning of the ADA, 154 E. 116th Street Corp. continuously controlled, managed and operated the public sidewalk abutting 154 East 116th Street, which includes the portion of the sidewalk constituting the entrance to defendants' place of public accommodation.

76.    154 E. 116th Street Corp.'s failure to construct and maintain an accessible entrance from the public sidewalk to defendants' place of public accommodation constitutes disability discrimination in a violation of the ADA.

77.    Defendants have and continue to discriminate against plaintiff in violation of the ADA by maintaining and/or creating an inaccessible public accommodation.

## THIRD CAUSE OF ACTION
## (VIOLATIONS OF THE NEW YORK STATE EXECUTIVE LAW)

78.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

79.    Plaintiff suffers from various medical conditions that separately and together prevent the exercise of normal bodily functions in plaintiff; in particular, the life activities of both walking and body motion range.  Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 296(21).

80.    Defendants' have and continue to subject plaintiff to disparate treatment by denying plaintiff equal opportunity to use their place of public accommodation all because plaintiff is disabled.

81.    Defendants discriminated against plaintiff in violation of New York State Executive Law § 296(2), by maintaining and/or creating an inaccessible place of public accommodation.  Each of the defendants have aided and abetted others in committing disability discrimination.

82.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law § 296(2)(c)(iii).

83.    In the alternative, defendants have failed to provide plaintiff with reasonable alternatives to barrier removal as required in violation of Executive Law § 296(2)(c)(iv).

84.    It would be readily achievable to make defendants' place of public accommodation fully accessible.

85.    It would not impose an undue hardship or undue burden on defendants to make their place of public accommodation fully accessible.

86.    As a direct and proximate result of defendants' unlawful discrimination in violation of New York State Executive Law, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

87.    Plaintiff has suffered damages in the amount of at least **$100,000.00 (ONE HUNDRED THOUSAND DOLLARS**) from each defendant and the total amount shall be determined at trial.

<u>**FOURTH CAUSE OF ACTION**</u>
**(VIOLATIONS OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK)**

88.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

89.    Plaintiff suffers from various medical conditions that separately and together, impair plaintiff's bodily systems - in particular, the life activity of both walking and body motion range -and thus plaintiff has a disability within the meaning of the Administrative Code § 8-102(16).

90.    The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to the New York City's Human Rights Law.  The Restoration Act confirmed the legislative intent to abolish "parallelism" between the Administrative Code and the Federal and New York State anti-discrimination laws by stating as follows:

> The provisions of this title shall be *construed liberally* for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal

or New York State civil and human rights laws, including those laws with
provisions comparably-worded to provisions of this title, have been so construed.

Restoration Act § 7 amending Administrative Code §8-130 (emphasis added). The

Restoration Act is to be construed broadly in favor of plaintiff to the fullest extent

possible.

91.     Defendants' have and continue to subject plaintiff to disparate treatment
and disparate impact by directly and indirectly refusing, withholding, and denying the
accommodations, advantages, facilities, and privileges of their place of public
accommodation all because of disability in violation of the Administrative Code § 8-
107(4).  Each of the defendants have aided and abetted others in committing disability
discrimination.

92.     Defendants have discriminated, and continue to discriminate, against
plaintiff in violation of the Administrative Code § 8-107(5)(b) by designing, creating
and/or maintaining an inaccessible commercial facility/space.

93.     Defendants have subjected, and continue to subject, plaintiff to disparate
treatment by directly and indirectly refusing, withholding, and denying the
accommodations, advantages, facilities, and privileges of their commercial facility/space
all because of disability in violation of the Administrative Code § 8-107(5)(b).

94.     In violation of Administrative Code § 8-107(6), defendants have and
continue to, aid and abet, incite, compel or coerce each other in each of the other
defendants' attempts to, and in their acts of directly and indirectly refusing, withholding,
and denying the accommodations, advantages, facilities, and privileges of their
commercial facility/space and the place of public accommodation therein, all because of
disability, as well as other acts in violation of the Administrative Code.

95.    Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a result, 154 E. 116th Street Corp. continuously controlled, managed and operated the public sidewalk abutting 154 East 116th Street, which includes the portion of the sidewalk constituting the entrance to defendants' place of public accommodation.

96.    154 E. 116th Street Corp.'s failure to construct and maintain an accessible entrance from the public sidewalk to defendants' place of public accommodation constitutes disability discrimination in a violation of the Administrative Code.

97.    Defendants discriminated against plaintiff in violation of the Administrative Code, § 8-107(4), and Local Law 58 by maintaining and/or creating an inaccessible public accommodation.

98.    As a direct and proximate result of defendants' unlawful discrimination in violation of the Administrative Code, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, embarrassment, and anxiety.

99.    Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to plaintiff's rights under the Administrative Code.

100.    By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and not desired as patrons of their public accommodation.

101.    Defendants' unlawful discriminatory conduct constitutes malicious, willful and wanton violations of the Administrative Code for which plaintiff is entitled to an award of punitive damages.  Administrative Code § 8-502.

102.    By refusing to make their place of public accommodation accessible, defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.  Defendants' unlawful profits plus interest must be disgorged.

103.    Plaintiff has suffered damages in the amount of at least **$100,000.00 (ONE HUNDRED THOUSAND DOLLARS**) from each defendant and the total amount shall be determined at trial.

<u>FIFTH CAUSE OF ACTION</u>
**(VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)**

104.    Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

105.    Defendants discriminated against plaintiff pursuant to New York State Executive Law.

106.    Consequently, plaintiff is entitled to recover the penalty prescribed by Civil Rights Law §§ 40-c and 40-d, in the amount of **$500.00 (Five Hundred Dollars)** per defendant for each and every barrier and violation.

107.    Notice of the defendants' violations and this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## SIXTH CAUSE OF ACTION
### (COMMON LAW NEGLIGENCE)

108.   Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

109.   Defendants negligently designed, constructed, operated, repaired and maintained their place of public accommodation located at 154 East 116th Street in a manner that has rendered their place of public accommodation inaccessible to the disabled plaintiff.

110.   At all relevant times, defendants have had a duty to design, construct, operate, repair, and maintain their place of public accommodation located at 154 East 116th Street in a manner that is accessible to the disabled plaintiff, including a duty to comply with the Administrative Code.

111.   Defendants breached their duty by negligently designing, constructing, operating, repairing and maintaining their place of public accommodation located at 154 East 116th Street in a manner that has rendered it inaccessible to the disabled plaintiff, and by violating the Administrative Code sections cited herein.

112.   Defendants' failure to design, construct, operate, repair and maintain their place of public accommodation located at 154 East 116th Street in a manner that is accessible to the disabled plaintiff has proximately caused plaintiff to be unable to enjoy full and equal access to defendants' place of public accommodation.

113.   Defendants have had actual and constructive notice that their place of public accommodation located at 154 East 116th Street is not accessible to the disabled. The inaccessibility of defendants' place of public accommodation is visible, open,

obvious, and apparent and has existed for a sufficient length of time for the defendants to discover and remedy the numerous inaccessibility conditions.

114.    As a direct result of defendants' negligence, plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

**INJUNCTIVE RELIEF**

115.    Plaintiff will continue to experience unlawful discrimination as a result of defendants' failure to comply with the above-mentioned laws.  Therefore, injunctive relief is necessary to order defendants to alter and modify their place of public accommodation and their operations, policies, practices and procedures.

116.    Injunctive relief is also necessary to make defendants' facilities readily accessible to and usable by plaintiff in accordance with the above-mentioned laws.

117.    Injunctive relief is further necessary to order defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, Executive Law and the Administrative Code.

**DECLARATORY RELIEF**

118.    Plaintiff is entitled to a declaratory judgment concerning each of the accessibility violations committed by defendants against plaintiff and as to required alterations and modifications to defendants' place of public accommodation, facilities, goods and services, and to defendants' policies, practices, and procedures.

**ATTORNEYS' FEES, EXPENSES AND COSTS**

119.    In order to enforce plaintiff's rights against the defendants, plaintiff has retained counsel and is entitled to recover attorneys' fees, expenses and costs pursuant to

42 U.S.C. § 1985, the ADA and the Administrative Code.  42 U.S.C. § 1988; 42 U.S.C.

§12205; 28 C.F.R. §36.505; and Administrative Code § 8-502.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court enter a judgment

against the defendants, jointly and severally, in favor of plaintiff that contains the

following relief:

A. Enter declaratory judgment declaring that defendants' have violated 42 U.S.C. § 1985,

the ADA and its implementing regulations, Executive Law and Administrative Code and

declaring the rights of plaintiff as to defendants' place of public accommodation, and

defendants' policies, practices and procedures;

B. Issue a permanent injunction ordering **defendants to close and cease all business**

until defendants remove all violations of the ADA, the 1991 Standards or the 2010

Standards, Executive Law and Administrative Code, including but not limited to the

violations set forth above;

C. Retain jurisdiction over the defendants until the Court is satisfied that the defendants'

unlawful practices, acts and omissions no longer exist and will not reoccur;

D. Find defendants guilty of a class A misdemeanor for violating New York State Civil

Rights Law pursuant to New York State Civil Rights Law § 40-d;

E. Award at least **$100,000.00 (ONE HUNDRED THOUSAND DOLLARS**) to

plaintiff as Compensatory damages, per defendant, plus pre-judgment interest, as a result

of defendants' violations of 42 U.S.C. § 1985, New York State Executive Law and the

Administrative Code of the City of New York;

F. Award at least **$100,000.00 (ONE HUNDRED THOUSAND DOLLARS**) to plaintiff as Punitive damages, per defendant, in order to punish and deter the defendants for their violations of 42 U.S.C. § 1985 and the Administrative Code of the City of New York;

G. Award plaintiff **$500.00 (FIVE HUNDRED DOLLARS**) for each and every barrier and violation of the law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

H. Award reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1985 and the Administrative Code;

I. Find that plaintiff is a prevailing party in this litigation and award reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1985 and the ADA; and

J. For such other and further relief, at law or in equity, to which plaintiff may be justly entitled.

Dated: April 7, 2014
      New York, New York

                       Respectfully submitted,

                       **PARKER HANSKI LLC**

                       By:_____/s_____
                             Glen H. Parker, Esq.
                             Adam S. Hanski, Esq.
                             Attorneys for Plaintiff
                             40 Worth Street, 10th Floor
                             New York, New York 10013
                             Telephone: (212) 248-7400
                             Facsimile: (212) 248-5600
                             Email:ash@parkerhanski.com
                             Email:ghp@parkerhanski.com